FILED

2007 May-25  AM 08:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| MARY ANGELA GARRARD, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | CV-06-CO-02322-J |
| | ] | |
| STATE OF ALABAMA, *et al.,* | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

On August 18, 2006, thirteen individual Plaintiffs filed a Complaint in this Court under the case styled *Hodge, et al., v. State of Alabama, et al.,* Case No. 6:06-cv-01644-LSC (N.D. Ala. August 18, 2006).   This Court subsequently severed the plaintiff's cases on November 2, 2006, and required each plaintiff to file her own Amended Complaint.   On December 11, 2006, Defendants Don Wright and James Wright (hereinafter collectively referred to as the "Wright defendants") filed a motion to dismiss in the cases of Tracee Shields, Barbara Dodd, and Mary Angela Garrard (hereinafter collectively referred to as "Plaintiffs" for the purposes of this memorandum

of opinion).  Plaintiffs' Amended Complaints allege claims against these defendants in both their individual and official capacities under 42 U.S.C. § 1983 (hereinafter referred to as "§ 1983"), as well as state law claims for wantonness, negligence, and wantonness per se.  Defendants' motions have been fully briefed by the parties and the issues are ripe for review.  Upon full consideration of the legal arguments presented therein, the Court is of the opinion that Defendants' motions are due to be granted in part and denied in part.

II.    Facts.[1]

All three of the plaintiffs whose cases are subject to the instant motions to dismiss are on probation and were, at some point, supervised by Anthony Baker.  Baker was employed as a probation officer by the Alabama Board of Pardons and Paroles (hereinafter referred to as "ABPP") in the Twenty-Fifth Judicial Circuit of the State of Alabama, which includes Marion and Winston Counties.  Baker's employment began on June 14, 2004, and was terminated on August 11, 2005.  At all times relevant to this action,

---

[1]Unless otherwise noted, the facts are taken from the Plaintiffs' Amended Complaints.

defendant James Wright was a Jailer at the Winston County Jail, while defendant Don Wright was the Winston County Jail Administrator.  As a jailer and administrator at the Winston County Jail, both Wright defendants were employees of the Winston County Sheriff's Department.  The facts relating to each of the plaintiffs relevant to the instant motions to dismiss are set forth in the following sections.

  A. Mary Garrard.

  Mary Garrard first met Baker in February of 2005 at the Winston County Courthouse.  In his office, Baker asked Garrard inappropriate, invasive, and personal questions about her sex life and expressed his desire to visit Garrard at her home.  Shortly thereafter, Baker discussed sexual matters with Garrard at the courthouse and made several comments to her about her appearance.  During one courthouse visit Baker asked her if she would have sex with him and keep it a secret, at which point she refused and reminded Baker that he was married.  Baker indicated that his marriage would not keep him from having sex with her, and he offered to falsify a drug test for her if she would do what he wanted.

While Garrard was jailed at the Winston County Jail in Double Springs, Alabama, Baker told her that he would help keep her out of prison. He said that he would talk to Jack Bostick, the district attorney, as well as the judge presiding over the case. Thereafter, Baker took Garrard from the jail to his office nearby. He, while still wearing his gun, told Garrard to have sex with him and promised that if she did so he would make sure that she would not go to prison. Baker placed his hand under her shirt, rubbed her breasts and nipples, and pulled up her shirt and bra. He repeated that he could help her stay out of prison. Baker then ordered Garrard to pull her pants and panties down, made her sit, took off her pants, lifted her legs, spread them apart to expose her vagina, ordered her to engage in sexual acts, penetrated her manually, masturbated himself, and made her watch. Baker then returned Garrard to the jail and instructed her not to tell anybody what had happened.[2]

_____

[2]In her Amended Complaint, Garrard states in Count Three that "James Wright had a statutory duty to report complaints of sexual misconduct and that he failed to report Anthony Baker despite personally witnessing sexual misconduct or personally receiving complaints of sexual misconduct." (Pl.'s Compl., Doc. 2, ¶ 60.) However, in the response to Defendants' motions to dismiss, Plaintiffs offer:

It is reasonable to infer from Baker's act of exposing and fondling himself a few feet away from James Wright's desk that he had the

Garrard's probation was later revoked.  Baker apologized and said that

he had done his best to help her.  He then returned to the Winston County

Jail on several occasions, pulled out his penis, made lewd sexual comments,

and asked Garrard to expose her breasts.  Baker last saw Garrard in April of

2005 in the Winston County Courthouse.

In May of 2005, Plaintiffs allege that the Winston County Sheriff's

Office received a report of Baker's sexual abuse from a male inmate.  He

reported that Baker had abused a female probationer, Sherry Nix.   On

---

support of James Wright.  It is also reasonable to infer, based on
James Wright's immediate physical proximity, that he was present
for Baker's sexual abuse of Garrard.  Based on Wright's physical
proximity, it is reasonable to infer [that] Wright knew that Baker
sexually abused Garrard.   It is also reasonable to infer that a
probation officer would not openly expose his penis a few feet away
from a jailer if he did not have that jailer's active support or
assurance that his sexual misconduct would not be reported.
Further, it is reasonable to infer that Wright ratified Baker's future
sexual abuse of Garrard and others by failing to take corrective
action.

(Doc. 8, p. 4.)  This statement is not supported by any allegations in the Amended
Complaints.  This appears to be nothing more than speculation on the part of Plaintiffs
or their counsel and is not appropriately considered by the Court in opposition to a
motion to dismiss.  Counsel's "reasonable inferences" are not facts which are properly
before the Court at this time.  Noticeably absent from the Amended Complaints are any
allegations that the plaintiffs saw Jailer Wright or that Jailer Wright was actually present
at his desk while Baker committed the acts, despite the fact that Baker told them that
Jailer Wright knew what he was doing, or that the plaintiffs yelled out to Jailer Wright
for assistance.

August 11, 2005, the ABPP suspended Baker from his position as a probation officer.

B.    Tracee Shields.

Tracee Shields was released from Julia Tutwiler Prison in June 2003 after serving a nineteen month sentence.  She then completed a nineteen month parole period with Gloria Greening as her probation officer in Cullman, Alabama.  Shields then began a four and a half year unsupervised probation period with Ms. Greening.  In February or March of 2005, Shields moved from Cullman to Winston County after receiving permission from Ms. Greening.

Unknown to Shields, Baker had a "hold" placed on her, which allowed any law enforcement official to take her into custody immediately.  Shields was taken into custody during a traffic stop, transported to the Winston County Jail, and incarcerated.  After approximately one week in jail, Shields met Baker.  He informed her that he placed the "hold" on her because he wanted to meet her and see what she looked like.  Baker then made inappropriate and lewd comments to Shields about her physical appearance and indicated that he found her attractive.  Baker then told Shields that he

had the power to get her a revocation hearing in a couple of days or he could make her wait another month.  On another occasion, Baker made inappropriate sexual comments and comments about Shields' personal appearance.  He exposed his penis, fondled himself, informed Shields that she was in serious trouble and that he, as her probation officer, could have her sent back to prison.  Baker offered to get her a hearing in two days if she would expose her breasts to him.

Shields reported to Baker's office, as instructed, after she was released from jail.  Behind closed doors, Baker made comments about his marital troubles and his sex life.  He told Shields that if she had sex with him, she could just drop off her money for fines and leave without checking in.  He also promised that she would not have any drug tests as long as she performed sexual favors for him.  During a subsequent probation visit, Baker made inappropriate, invasive, and personal comments to Shields, including comments about her physical appearance, requests for sex, and promises that if she had sex with him she would not have to come back.  Baker ordered Shields to strip down to her bra and panties, he reached into her pants and into her vagina, pulled his pants down, pulled out his penis,

directed Shields to play with his penis, and then ordered her to perform oral sex on him.  Baker failed to get an erection, got angry with Shields, grabbed her by the back of her neck, pulled her up, and told her to sit on his desk and watch.  Baker stimulated himself, got an erection, and masturbated in front of her while he made her watch.   Baker masturbated until he ejaculated and then he further demeaned Shields by making her clean up his semen while in her bra and panties.  While she was doing so, Baker informed her that she would have to return to his office because he was disappointed in her sexually.[3]

---

[3]Plaintiffs' response brief again states facts that were not contained in the Amended Complaint.  In the brief, Plaintiffs add:

> [Baker] said, "The next court date is in two days and I can get you in court in two days if you do what I want . . . Show me your tits right now and you are in court in two days.  Otherwise it will be another month."  Shields asked Baker if he was trying to get her in trouble with Jailer James Wright, who was standing only a few feet away.  Baker assured her that she would not get in trouble with James Wright if she showed her breasts to him, so she did.

(Doc. 8, p. 6.)  This statement was not asserted in either the Amended Complaint or the original complaint filed in the *Hodge* case.  The Court is under no obligation to consider facts that are not alleged in the complaint when ruling on a motion to dismiss.

C.    Barbara Dodd.

Barbara Dodd first met Baker in June 2005 at the Winston County Jail. Baker approached her and told her that he would make things easy for her if she would show him something or he would make things difficult for her if she refused.  On two separate occasions, Baker exposed his penis and fondled himself in front of Dodd.  Dodd then complained to James Wright about Baker's misconduct.[4]

III.    Motion to Dismiss Standard.

A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a reasonable doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In deciding a Rule 12(b)(6) motion, the court must ". . . accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party."  *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir.

---

[4]Dodd does not indicate when she complained to Jailer Wright, but no mention of the complaint is made until after she alleges that he fondled himself in front of her. Therefore, the Court infers that the complaint was made after Baker's acts.

1998).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)).  Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364 (11th Cir. 1997).

IV.    Discussion.

The Wright defendants contend that all of the plaintiffs' claims against them are due to be dismissed.  First, they argue that the § 1983 claims against them in their official capacity "fail due to Eleventh Amendment immunity, the definition of 42 U.S.C. § 1983, the Plaintiff's lack of standing, mootness, and the inability to fashion an effective equitable remedy." (Doc. 4, p. 3.)  Second, Defendants assert that Plaintiffs' individual capacity federal claims are due to be dismissed because they are entitled to qualified immunity.  *Id*.  Third, Defendants argue that Plaintiffs' state law claims are due to be dismissed because they "are entitled to absolute immunity, no

effective equitable remedy can be fashioned, and the Plaintiff's wantonness per se claim fails to state a claim as a matter of law." *Id*.

A.    Section 1983 Official Capacity Claims.

1.    Claims for Money Damages.

The Wright defendants offer that Plaintiffs' money damages claims against them in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  (Doc. 4, p. 4.)  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity . . . or Congress has abrogated its Eleventh Amendment immunity . . ., and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (internal citations omitted).  Focusing on the "close working relationship" between sheriffs and jailers under Alabama law, the Eleventh Circuit, in *Lancaster*, determined that Alabama jailers sued in their official capacities are state officials entitled to Eleventh Amendment immunity.  *Id*.  *See also, Carr v. City of*

*Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990) (finding that a deputy sheriff is a state official entitled to Eleventh Amendment immunity); *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to the protection of the Eleventh Amendment).

Defendants also argue that Plaintiffs' claims against them in their official capacities must fail because they, in their official capacities, are not "persons" within the meaning of § 1983.  (Doc. 4, p. 4.)  Relying on the Supreme Court case of *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), Defendants assert that state officials, in their official capacities, are not "persons" under § 1983.  *Id.*  "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will*, 491 U.S. at 71.  *See also*, *Carr*, 916 F.2d 1521, 1525 n. 3 (11th Cir. 1990) (citing *Will* for the proposition that "States and their officials no longer need to rely exclusively on eleventh amendment immunity to avoid liability in their official capacities in section 1983 cases.").

The Wright defendants worked for the Winston County Jail, and, therefore, they are not "persons" subject to suit under § 1983 in their

official capacities and they are entitled to Eleventh Amendment immunity as to Plaintiffs' claims against them for money damages in their official capacities.

      2.    Claims for Equitable Relief.

The Wright defendants argue that Plaintiffs' official capacity claims for equitable relief must be dismissed because they are moot, Plaintiffs lack standing, the facts do not support an equitable remedy, and the type of injunction requested is not enforceable under federal law.

As Defendants note in their brief, Plaintiffs have not alleged that they are still inmates at the Winston County Jail.  "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." *Dudley v. Stewart*, 72 F.2d 1493, 1494 (11th Cir. 1984).  *See also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (finding plaintiff's individual claim for injunctive relief moot and properly dismissed as he had been transferred from the county jail in which the unconstitutional conditions allegedly existed); *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that

a prisoner's transfer or release from jail moots his individual claim for declaratory and injunctive relief."). In *McKinnon*, the Eleventh Circuit was unpersuaded by the plaintiff's argument that his claim is not moot because there is no assurance that he will not be returned to the jail. *McKinnon*, 745 F.2d at 1363. Because there is no allegation that Plaintiffs remain incarcerated at the Winston County Jail, their official capacity injunctive relief claims against the Wright defendants raised by them as individuals, and not as a class, are moot. It is worth noting that even if the Court were to interpret Plaintiffs' Amended Complaints as asserting claims on behalf of a class, their claims are still due to be dismissed as moot because the class was not certified before their release or transfer. *See, e.g., McKinnon*, 745 F.2d at 1363 (citing *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 130 (1975)).

Defendants also question whether Plaintiffs have standing to obtain an equitable remedy. (Doc. 4, p. 6.) They cite to the United States Supreme Court decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), in which the plaintiff sought an injunction barring the future use of choke holds by the police. The Court found that the plaintiff lacked standing because his

case rested solely on pure speculation that he might be stopped by the police, might be arrested, and might be subjected to another chokehold. *Id*. at 108. The Court noted that in the five months that elapsed between the choking incident and the filing of the complaint, the plaintiff was not subjected to another chokehold. *Id*. Defendants would have this Court draw a direct analogy between the facts of *Lyons* and the facts of the three plaintiffs in this case. They frame Plaintiffs' argument as follows: "Because the Plaintiff is no longer an inmate in the Winston County Jail, her claim is, in essence, that she *might* be stopped by police, *might* be arrested by an officer with authority to incarcerate someone in the Winston County Jail, that ABPP *might* again hire Anthony Baker, Anthony Baker *might* again be assigned to her, the Wright Defendants *might* again allegedly allow him access to her at the jail, and Mr. Baker *might* again molest her." (Doc. 4, pp. 7-8.) The Court agrees with Defendants that Plaintiffs' request for an injunction relies on speculation as to future events that is far fetched to say the least.

Defendants also argue that there is no set of facts which would support an award of equitable relief to these plaintiffs. (Doc. 4, p. 8.) In order to

receive permanent injunctive relief from a constitutional violation, a plaintiff must show: (1) a constitutional violation; (2) continuing irreparable injury if the injunction is not issued; and (3) the lack of an adequate remedy at law. *See Newman v. State of Ala.*, 683 F.2d 1312, 1319 (11th Cir. 1982). First, the Wright defendants offer that Plaintiffs cannot show an actionable injury on the part of these defendants. Specifically, and discussed in more detail in the following sections, the Wright Defendants contend that they are entitled to qualified immunity. However, even if this Court finds that the defendants committed an actionable wrong, i.e., they are not entitled to qualified immunity, the Wright defendants argue that there is no continuing irreparable injury. As stated above, Plaintiffs are no longer incarcerated at the Winston County Jail. Finally, Defendants do not believe that Plaintiffs can argue that they have no adequate remedy at law. They have raised individual capacity claims for money damages against each of the individual defendants.

Finally, the Wright defendants have pointed out that "obey the law" injunctions are not enforceable. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1233 n. 14 (11th Cir. 2005) ("This Circuit has held repeatedly that 'obey the law'

injunctions are unenforceable."); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999) (finding that an injunction prohibiting a city from discriminating against a group in future annexation decisions is not an available remedy and does not satisfy the requirements of Fed. R. Civ. P. 65(d)); *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 899 (5th Cir. 1978) (invalidating an injunction which prohibited a defendant from violating Title VII in making its employment decisions).  Therefore, Defendants assert that to the extent Plaintiffs seek an order from this Court requiring the Wright defendants to keep Anthony Baker and/or other alleged sexual predators away from them in accordance with federal law, such an order is unenforceable as a matter of law.  (Doc. 4, pp. 9-10.)

For the reasons stated above, Plaintiffs' claims for equitable relief against the Wright defendants in their official capacities are due to be dismissed.

B.    Section 1983 Individual Capacity Claims and Qualified Immunity.

Both Jail Administrator Wright and Jailer Wright claim that they are entitled to qualified immunity from Plaintiffs' § 1983 individual capacity claims.  (Doc. 4, p. 10.)  The seminal case regarding qualified immunity is

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982), which stands for the proposition that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see also Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002); *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000). A public official is entitled to qualified immunity if his actions were objectively reasonable. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)). The purpose of qualified immunity is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 535 U.S. 194, 206 (2001)).

To be successful on a qualified immunity defense, a public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee*, 284 F.3d at 1194. If the defendant makes such a showing, the burden shifts to the plaintiff to prove that qualified immunity does not apply. *Id.* The first part of the test is

satisfied, in that both Jail Administrator Wright and Jailer Wright were acting within their discretionary capacity. All of Plaintiffs' allegations regarding these defendants are based upon their roles as officials in the Winston County Jail, and it is in this capacity only that they have the ability to supervise inmates, provide security for inmates, and otherwise operate a jail. Because all of the alleged actions were undertaken in these roles, the Wright defendants were clearly acting within their discretionary authority.

The Eleventh Circuit utilizes a two-part test to ascertain whether a public official is protected by qualified immunity. First, the Court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Vinyard*, 311 F.3d at 1346 (citing *Hope v. Pelzer*, 536 U.S. 730, 735 (2002)). Second, if the Court is convinced that a constitutional right would have been violated under the plaintiff's version of the facts, the Court must determine whether the right was clearly established at the time of the alleged violation. *Id.* The Court will deny a public official qualified immunity only if the plaintiff convinces the Court that the constitutional right at issue was clearly established at the time of the alleged violation to

the degree that these defendants had "fair warning" that their conduct violated Plaintiffs' constitutional rights.  *See Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003); *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

Thus, the first step in analyzing any case asserting the defense of qualified immunity "is to determine . . . whether the plaintiff has alleged a deprivation of a constitutional right." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998).  In other words, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. According to the Wright defendants, the plaintiffs' federal individual capacity claims are not supported by the facts alleged in the Amended Complaints.

1.   Jailer Wright.

Plaintiffs allege that Jailer James Wright violated their rights under the Eighth, Fourth, and Fourteenth Amendments to the United States Constitution.  In order to make out such claims, Plaintiffs must show that Jailer Wright was deliberately indifferent to a serious risk of harm to each

individual plaintiff posed by defendant Baker.  (Doc. 4, p. 14.)  In *Farmer v. Brennan*, 511 U.S. 825 (1994), the United States Supreme Court explained that a prison official cannot be found liable under the Eighth Amendment unless the official both knows of and disregards an excessive risk to an inmate's health or safety.  *Id.* at 837.  The deliberate indifference standard requires both a subjective component (knowledge of the risk or willful blindness on the part of the official) and an objective component (that a serious risk of harm actually existed).  *Id.* at 838-39.  "[T]o survive summary judgment on [a] section 1983, Eighth Amendment claim, [a plaintiff is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). In the context of failure to protect claims, the Eleventh Circuit has made it clear that when the inmate has not requested protection and where the officer had no knowledge of a threat prior to the injury, a failure to protect claim must fail.  *See Carter v. Galloway*, 352 F.3d 1346, 1349-51 (11th Cir. 2003).  "Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an

inference could be drawn that a substantial risk of serious harm exists - and the prison official must also 'draw that inference.'" *Id*. at 1349 (quoting *Farmer*, 511 U.S. at 837).  Mere "negligent failure to protect an inmate from attack does not justify liability under section 1983 . . . ."  *Id*. at 1350 (quoting *Brown v. Hughes*, 894 F. 2d 1533, 1537 (11th Cir. 1990).

Plaintiffs aver that Jailer Wright's qualified immunity defense must fail because "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's force can be held liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002).  Plaintiffs also note that in the Eleventh Circuit, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment . . . . The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment."  *Id*.  In *Skrtich*, the inmate brought a § 1983 action against correctional officers on the theory that he was subjected to excessive force in violation of his Eighth and Fourteenth Amendment rights.  *Id*.  However, there are no facts alleged in the Amended Complaints that support the conclusion that Jailer Wright knew that

Plaintiffs were at risk of attack by Anthony Baker at the time the attacks allegedly occurred.  Plaintiffs only make conclusory allegations that Jailer Wright "failed to report Anthony Baker despite personally witnessing sexual misconduct or personally receiving complaints of sexual misconduct." Even if Jailer Wright had knowledge that Baker abused another inmate, it does not follow that he knew that the individual plaintiffs in this case were at risk.

Taking the facts as alleged in Plaintiffs' Amended Complaints, the Court is not satisfied that Plaintiffs have demonstrated that defendant James Wright violated Plaintiffs' constitutional rights.

2.    Jail Administrator Wright.

Plaintiffs' claims against Jail Administrator Wright based upon his failure to protect them from attacks by defendant Baker are due to be dismissed for the same reason as those asserted against Jailer Wright. However, Plaintiffs have also raised claims based upon Jail Administrator Wright's establishment of policies and customs which allowed Baker to commit acts of sexual misconduct in the Winston County Jail.  If a supervisory official, such as Jail Administrator Wright, does not personally

participate in an alleged violation, a plaintiff must demonstrate a causal connection between the alleged acts of the perpetrator and those of the official, and such a connection may be established where the supervisor's improper custom or policy resulted in deliberate indifference to the plaintiff's constitutional rights. *See, e.g., Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Not one plaintiff in any of these related cases alleges in her amended complaint that she told Jail Administrator Wright what had happened to her. Plaintiffs allege that Wright "knew or should have known about the widespread pattern and practice of sexual harassment and abuse suffered by the plaintiffs and other females." They also allege that it is the policy and custom of Don Wright and the jailers at the Winston County Jail "to allow Baker to subject female inmates and females on probation to a sexually hostile environment, and it was the policy and custom of the officials capable of stopping the hostile environment to make no effort to rescue these females from the sexually hostile environment." However, such conclusory allegations are not sufficient to survive a motion to dismiss. *See,*

*e.g., Davila v. Delta Air Lines*, 326 F.3d 1183, 1185 (11th Cir. 2003)

("conclusory allegations, unwarranted factual deductions or legal conclu-

sions masquerading as facts will not prevent dismissal").  The only allegation

that asserts any knowledge on behalf of Jail Administrator Wright of a

problem with Baker is the allegation that an unnamed male inmate reported

to the Winston County Sheriff's Office that Baker had abused another

probationer named Sherry Nix.  There is no allegation that his report ever

reached Jail Administrator Wright.

Plaintiffs have also alleged claims under the Equal Protection Clause

of the Fourteenth Amendment.  Specifically, they contend that males in the

Winston County Jail were not subjected to the same gender based treatment

as females.  To properly establish an equal protection claim, "a prisoner

must demonstrate that (1) 'he is similarly situated with other prisoners who

received' more favorable treatment; and (2) his discriminatory treatment

was based on some constitutionally protected interest such as race." *Jones*

*v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Fla.*

*Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)).

Plaintiffs' Amended Complaints fail to allege that similarly situated inmates

received more favorable treatment.  Simply alleging that male inmates at the Winston County Jail were not sexually abused is not enough to show that anyone attempted to abuse them and that Jail Administrator Wright took actions to stop them while leaving the female inmates unprotected.  The Amended Complaints do not allege any facts from which the Court can conclude that the policies and customs of the Winston County Jail provided more protection against sexual assault for males than it did for females.

Furthermore, as noted by Defendants, Plaintiffs' status as probationers means, as a matter of law, that they cannot maintain a Fourteenth Amendment claim related to their conditions of confinement.  The Eighth Amendment protects the rights of convicted prisoners, such as Plaintiffs, while the Fourteenth Amendment's Due Process Clause governs the rights of pretrial detainees.  *Cottrell v. Caldwell*, 65 F.3d 1480, 1490 (11th Cir. 1996).  Although the analysis under either amendment is the same, the plaintiff probationers in these cases cannot be both pretrial detainees and convicted prisoners.  *Id*. at 1490.

For these reasons, the Court finds that Plaintiffs' allegations do not support a finding that defendant Don Wright has violated Plaintiffs' constitutional rights.

C.     Plaintiffs' State Law Claims.

The Wright defendants also argue that Plaintiff's individual and official capacity state law claims for negligence, wantonness, and wantonness per se are due to be dismissed.  (Doc. 4, p. 21.)  First, Defendants contend that both Jailer Wright and Jail Administrator Wright are absolutely immune from Plaintiffs' state law money damages claims.  *Id.* at 22.  Under Alabama law, sheriffs are officials of the state.  *See* Art. V, § 112, Ala. Const. of 1901 ("The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county").  Therefore, sheriffs act for the state, and not the county, when performing their duties.  *See McMillan v. Monroe County*, 520 U.S. 781, 793 (1997).  Jail staff are likewise state officials as they are employees of the sheriff.  *See Turquitt v. Jefferson County*, 137 F.3d 1285, 1289 (11th Cir. 1998).  Accordingly, as employees of

the Winston County Jail, an arm of the Winston County Sheriff, the Wright

defendants are officials of the State of Alabama.

An Alabama sheriff is immune from suit under Article I, § 14 of the

Alabama Constitution of 1901:

> except for actions brought (1) to compel him to perform
> his duties, (2) to compel him to perform ministerial acts,
> (3) to enjoin him from enforcing unconstitutional laws, (4)
> to enjoin him from acting in bad faith, fraudulently,
> beyond his authority, or under mistaken interpretation of
> the law, or (5) to seek construction of a statute under the
> Declaratory Judgment Act if he is a necessary party for the
> construction of the statute.

*Parker v. Anderson*, 519 So. 2d 442, 443 (Ala. 1987).  The only exceptions

to immunity enjoyed by sheriffs and their employees are suits to enjoin their

conduct.  *See Alexander v. Hatfield*, 652 So. 2d 1142, 1143 (Ala. 1994).

With only these narrow exceptions, Alabama sheriffs and their employees

are immune from such a state law tort suit.  *See Ex parte Purvis*, 689 So. 2d

794, 796 (Ala. 1996) (holding that sheriff and deputy were entitled to

sovereign immunity in both their individual and official capacities).

Plaintiffs have sued the Wright defendants in their individual capacities

under state law for money damages.  Based on the foregoing constitutional

and case law, such claims are barred by these defendants' entitlement to absolute immunity.

Plaintiffs' official capacity state law claims against the Wright defendants are also due to be dismissed because the Eleventh Amendment to the United States Constitution provides immunity to the States and their officials.  However, there are three exceptions to such immunity: (1) waiver by the State; (2) abrogation by Congress; and (3) prospective injunctive relief where the plaintiff challenges the constitutionality of the official's act.  *Carr*, 916 F.2d at 1524-25.  There is no indication that either the State of Alabama or Congress has waived or abrogated Alabama's Eleventh Amendment immunity.  Also, as noted by Defendants, the third exception is not applicable to Plaintiffs' state law claims because negligence, wantonness, and wantonness per se claims do not challenge whether defendants acted properly under the federal constitution.  Neither federal nor Alabama state law allows for "obey the law" injunctions.  *See Corte v. State*, 67 So. 2d 782, 786 (1953) (holding that equity will not enjoin the commission of a crime).  There are no allegations that any of the three plaintiffs remain incarcerated at the Winston County Jail.  Therefore, any

request for equitable relief is moot and not cognizable under Alabama law. *See, e.g., Morrison v. Mullins*, 154 So. 2d 16, 18 (Ala. 1963).

Finally, Plaintiffs' wantonness per se claims are based upon the Wright defendants' violations of Ala. Code §§ 14-3-9 and 14-3-52. However, neither of these statutes are applicable to these defendants. By its express terms, § 14-3-9 applies only to "employees of the Department of Corrections." Additionally, by its explicit terms, Chapter 3 of Title 13 applies to the "Prison System." Jails are explicitly mentioned in Chapter 6. Neither Jailer Wright nor Jail Administrator Wright are employees of the Department of Corrections or part of the "Prison System." *See Turquitt*, 137 F.3d at 1288-91 (holding that jailers are the employees of the sheriff and that the sheriff "has control over the inmates of the jail, employees of the jail, and the jail itself."). Consequently, as these defendants are not subject to the provisions of either § 14-3-9 or § 14-3-52, Plaintiffs cannot use them to assert a claim based upon wantonness per se.

V.    Attorneys' Fees.

Defendants' request that they be awarded attorneys' fees pursuant to 42 U.S.C. § 1988 is due to be denied.

VI.    Conclusion.

For the foregoing reasons, defendants Don Wright and James Wright's

Motion to Dismiss (Doc. 3) is due to be granted in part and denied in part.

Done this <u>24th</u> day of <u>May 2007</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153